(Nos. 49875-76.-
(No. 50207.-

H. FRANKLIN JOHNSON, Appellee, v. LA GRANGE STATE BANK, Trustee, *et al.*, Appellants.—JOHN F. HAVEY, Ex'r, *et al.*, Appellants, v. FRANCES B. PATTON, Indiv. and as Ex'r, *et al.*, Appellees.

*Opinion filed November 22, 1978.*

344

348

Moriarty, Rose & Hultquist, Ltd., of Chicago (Robert C. Hultquist and Kathleen Ross, of counsel), for appellants.

Harvey J. Barnett, Robert R. Tepper, Robert I. Berger, Ross P. Benjamin, and Sybil C. Malinowski, of Chicago (Rosenthal and Schanfield, of Chicago, of counsel), for appellee.

Raymond F. Simon, of Chicago (Gemma Allen, of counsel), guardian *ad litem*.

Concannon, Dillon, Snook & Morton, of Chicago, for *amicus curiae* Corporate Fiduciaries Association of Illinois.

Sherman P. Corwin, Scott Ellwood, William K. Stevens, John C. Williams and James N. Zartman, of Chicago, for the Illinois State Bar Association and the Probate Practice and Trust Law Committees of the Chicago Bar Association.

Edward F. Casey of Casey & Casey, of Springfield, for appellant John F. Havey.

Anthony J. Manuele, of Springfield, for appellee Frances B. Patton.

MR. JUSTICE RYAN delivered the opinion of the court:

These consolidated cases involve the validity of *inter vivos* transfers of property by one spouse against the marital rights of the surviving spouse in the property transferred.

Johnson v. La Grange State Bank, cause Nos. 49875 and 49876, concerns an *inter vivos* trust created by Eleanor Johnson for the ultimate benefit of several relatives and various charities. The second case, Havey v. Patton, involves savings accounts created by Myra Havey in which she named her sister-in-law as joint tenant. The plaintiff in each case is the surviving husband. Each has claimed his respective statutory share in the assets transferred.

In the Johnson case, plaintiff, H. Franklin Johnson, and Eleanor Johnson had been married in 1937 and for more than 36 years enjoyed a happy marriage. The plaintiff, who had accumulated an estate in excess of $2,000,000, was very generous towards his wife and quite frequently gave her substantial gifts of money and securities. Mrs. Johnson relied on her husband's business acumen and followed his advice in making investments, as well as in managing the accumulated gifts which he gave her. The trial court found, and it is not disputed, that there was no estrangement or feeling of antipathy of one spouse toward the other.

In 1966, Mrs. Johnson learned that she had cancer; she later learned that her life expectancy was less than five years. Prior to 1969 the Johnsons, who had no children, had simple reciprocal wills which provided that in the event of the death of either of them, the survivor would receive the decedent's entire estate. On February 5, 1969, the Johnsons executed new wills in which Johnson provided that his wife's relatives would receive 20% of his estate if his wife did not survive him, and Mrs. Johnson provided that her entire estate was left to her family if Johnson did not survive her.

In the summer of 1970, Mrs. Johnson executed a new will and again in February of 1972, seven months before her death, she executed another will and simultaneously executed a revocable *inter vivos* trust in which she placed in trust substantially all of her assets. The will, by the residuary clause, poured the balance of her estate into the *inter vivos* trust. By the terms of the trust, Mrs. Johnson named herself trustee of certain properties (stocks, bonds, etc.). The entire income of the trust was to be paid to her during her lifetime, and she reserved the power to invade the principal of the trust, as she in her discretion saw fit. She retained broad powers to invest, reinvest, divide, and distribute the trust property and likewise retained the

power to alter, amend or modify the trust provisions in any manner. The La Grange State Bank was designated as successor trustee to act upon her death or disability. The trust instrument provided the method of determining when she would be considered disabled. Upon her death, the successor trustee was to distribute assets of the trust to Mrs. Johnson's mother, sister, niece, and certain named charities. The trust document included a provision whereby her husband, plaintiff, was to receive so much of the income and principal to meet any emergency situation for his reasonable support, medical, and burial expenses. The trustee, however, was advised to consider other sources available to him and the needs of Mrs. Johnson's mother and sister before making any such emergency payments.

In 1972, Mrs. Johnson moved to Florida, where she lived until her death in September 1972. Her will was admitted to probate in Florida on October 19, 1973. During the pendency of the Florida proceeding, the plaintiff instituted an action in the circuit court of Cook County against the trustee and the trust beneficiaries to set aside the *inter vivos* trust established by his wife, insofar as it deprived him of his marital rights in the property held in trust. Plaintiff sought to impose a constructive trust on the trust assets to the extent of his claim. In count I of his three-count amended complaint he alleged that, as the surviving spouse, the trust was illusory and fraudulent as to him and that he was therefore entitled to receive a statutory one-half share of the original corpus of the trust. Count II alleged that the decedent established the trust with the intention of defeating plaintiff's marital interest in the settlor's personal estate. Count III alleged that the decedent acted in an intentional, deliberate, and fraudulent manner for the purpose of denying plaintiff his statutory share of the decedent's estate. The court allowed defendants' motion to dimiss counts I and II of the amended complaint, but allowed count III to stand. Trial

was held without a jury. At the conclusion of the plaintiff's case, judgment was entered for the defendants. The trial court also found no support for the plaintiff's contentions that decedent's actions were fraudulent and held that the plaintiff's allegations were made in bad faith and without reasonable cause, and assessed attorney's fees and costs against the plaintiff. Plaintiff appealed from both orders.

The First District Appellate Court reversed the trial court (50 Ill. App. 3d 830), holding that an *inter vivos* trust may not defeat the marital rights of a settlor's surviving spouse where the settlor effectively retains ultimate control of the trust assets. Also, since the appellate court sustained the plaintiff's cause of action, the trial court's judgment assessing attorney's fees and expenses against the plaintiff as a sanction under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41) was accordingly reversed.

The second case in this appeal, Havey v. Patton, cause No. 50207, involves certain joint accounts created by the decedent, Myra Havey. Myra Havey and Paul Havey were married for more than 35 years at the time of Mrs. Havey's death in 1972. They had been living apart and had experienced marital difficulties. In July 1972, she converted a savings account standing in her name at a bank to a joint account with defendant Frances B. Patton, her sister-in-law, and likewise opened a joint savings account with this defendant at a savings and loan association and purchased a jointly held certificate of deposit in another savings association. She also created a joint tenancy in some real estate which is not involved in this appeal. Defendant Patton never contributed any funds to the accounts, nor did she have the power to withdraw from the accounts except to pay Mrs. Havey's bills. The record discloses, moreover, that Mrs. Havey created the accounts at a time when she knew she was terminally ill, and that

the accounts were intended by Mrs. Havey to give her property to defendant Patton and keep it from her husband after her death.

Mrs. Havey executed her will in 1972. She named defendant Patton as executor and ordered her estate to be divided between defendant Patton and Paul Havey. The fourth paragraph of her will provided as follows:

> "I have set up certain accounts in joint tenancy with the right of survivorship which are to pass by operation of law and are not to be made part of my estate in probate."

Mrs. Havey's probate estate totaled approximately $4,000, which was not enough to cover the expenses incurred by the last illness, funeral expenses, and cost of administration. The joint accounts held with defendant Patton, however, contained $47,509.77.

Paul Havey renounced his wife's will. He died during the administration of the estate; subsequently his executor, John F. Havey, filed this action for declaratory judgment alleging that the aforementioned creation of joint accounts by Mrs. Havey fraudulently deprived Paul Havey of his marital rights in the property. The trial court rejected this contention and entered judgment for defendant Patton.

The Fourth District Appellate Court, with one justice dissenting, affirmed the decision of the trial court, holding that there was sufficient donative intent on behalf of the decedent to sustain a gift of the joint accounts to defendant Patton. (52 Ill. App. 3d 897, 901.) The court noted that the fact that the accounts were created for the express purpose of depriving Paul Havey of his interest in the property did not support his contention that as to him the decedent's intent was fraudulent.

Before considering the main issue in these cases, there is a preliminary matter concerning the Florida proceeding in Johnson v. La Grange State Bank. The guardian *ad litem,* in its brief and again in oral argument, has intimated

that the decision of the Florida court forbidding plaintiff's attempt to renounce his wife's will in Florida is binding on this court and precludes us from reaching the merits of plaintiff's contention concerning the *inter vivos* trust. We do not agree. The judgment of the Florida circuit court, affirmed on appeal, cannot be construed as impinging on the jurisdiction of the courts of this State to consider the validity of an *inter vivos* trust where the interests affected are wholly within this State. As our appellate court properly noted, the trust was created in this State, the corpus has remained here, the plaintiff was domiciled here at the time of the decedent's death, and the principal defendants are located in this State (50 Ill. App. 3d, 830, 835).

In our view, the decision of the Florida court, which has significance as a matter of probate law, is entirely ancillary to the threshold question presented for our consideration, *i.e.,* whether the assets of such an *inter vivos* trust may be properly insulated from the testator's probate estate insofar as her surviving spouse is concerned. Since an *inter vivos* trust is at issue in this case, we agree with the appellate court that the plaintiff's apparent failure to renounce the will in Florida is not controlling on the power of the courts of this State to consider the trust's validity *vis-a-vis* the surviving spouse.

Plaintiffs in both of these cases rely on this court's opinion in *Montgomery v. Michaels* (1973), 54 Ill. 2d 532. In *Montgomery,* the issue was whether certain savings account trusts ("Totten trusts") created by the decedent for the benefit of her children by a former marriage defrauded the surviving spouse of his marital rights. The decedent had provided that the accounts were to be paid to the named beneficiaries upon her death, but during her lifetime she retained complete control over the accounts and made deposits in and withdrawals from them. This court held that while Totten trusts were not invalid *per se*

(see *In re Estate of Petralia* (1965), 32 Ill. 2d 134), such trusts were ineffective to defeat a surviving spouse's statutory or forced share in the estate of his deceased spouse. The opinion stated:

> "In the case at bar the settlor was also the trustee. During her lifetime she retained absolute, unqualified control over the bank accounts, and possessed and exercised all incidents of complete ownership, including the right to receive interest payable thereon and withdraw the principal thereof. The enjoyment of the proceeds of the accounts by the beneficiary or beneficiaries named therein would arise only upon the death of the settlor-trustee with the accounts remaining intact.
>
> Under these circumstances, the expressed statutory policy of protecting a surviving spouse's statutory share in the estate should prevail, regardless of the intent of the deceased spouse in creating the savings-account trust." 54 Ill. 2d 532, 536.

The above-quoted language from *Montgomery* was cited by the appellate court in *La Grange State Bank,* and is significant in that court's decision that the *inter vivos* trust created by Mrs. Johnson could not serve to deprive plaintiff of his marital rights in the trust assets. The court noted that *Montgomery,* as illustrated by the above-quoted language, adopted a "retention of ownership" test to be employed by the courts to determine whether transfers may be deemed fraudulent as to the rights of surviving spouses. Basically, the "retention of ownership" test determines whether the decedent retained so much control over the property in question that it can be said that the decedent in effect only parted with that control upon death. Under such circumstances, where the donor does in effect "retain ownership" of the property subject to the

transfer, the trust will be deemed substantially testamentary in character, at least insofar as the surviving spouse is concerned, so as to subject it to the claims of the surviving spouse just as if the property had passed under the decedent's will, or had otherwise been included in the probate estate. *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 538.

The "retention of ownership" test of *Montgomery* was limited on its facts to Totten trusts. A Totten trust, in effect, purports to change ownership of the deposited funds to the designated beneficiaries upon the death of the settlor. The requirements for their establishment are very informal. The enjoyment of the beneficiaries is provisional and tentative, since there are no limitations or qualifications on the ability of the settlor to withdraw funds from the account. Inevitably, a great deal of control and ownership is reserved to the settlor over the funds. (See 1 A. Scott, Trusts sec. 58.5, at 546-47 (3d ed. 1967).) These are valid reasons for invalidating such trusts *per se* insofar as they relate to the claims of the surviving spouse. Because the degree of ownership by the trustee is customarily so great, public policy in favor of protecting surviving spouses permits the categorical conclusion that such arrangements are testamentary in character and are ineffective to deprive surviving spouses of their lawful claims.

The courts of this State have readily upheld *inter vivos* trust arrangements where the settlor has named himself trustee and retained indicia of ownership and control. (*Farkas v. Williams* (1955), 5 Ill. 2d 417.) There is no contention in this case that the trust was not a valid *inter vivos* trust. It is only contended that it is invalid to the extent that it deprived the plaintiff of his marital rights in the property. With the exception of *Montgomery v. Michaels* and the rules therein concerning the validity of Totten trusts, no general principles have emerged invalida-

ting such other *inter vivos* transfers *per se* in respect to the marital rights of surviving spouses. Rather, whether the transfer of property in trust is vulnerable to attack depends on whether the trust employed is colorable and illusory and a fraud on marital rights. (*E.g., Holmes v. Mims* (1953), 1 Ill. 2d 274.) This determination necessarily turns on the facts of each individual case. (See *Burnet v. First National Bank* (1957), 12 Ill. App. 2d 514.) We therefore reject the reasoning of the appellate court that our decision in *Montgomery* is controlling in this case.

In *Montgomery,* the court acknowledged that, in some instances, whether the trust is invalid as to a surviving spouse is determined by a consideration of all the facts and circumstances which might be indicative of an intent to defraud the surviving spouse of his statutory share and cited *Rose v. St. Louis Union Trust Co.* (1969), 43 Ill. 2d 312. The defendants in this court likewise urge that *Rose* adopted the "intent to defraud" test in determining if an *inter vivos* trust is invalid as to the surviving spouse. *Rose* did in fact apply the "intent to defraud" test; however, it is important to note that *Rose* was applying Missouri law, and under the Missouri statute and decisions a voluntary conveyance which a surviving spouse may set aside as fraudulent is one that is executed with the intent and purpose of defeating the marital rights of the spouse in the property conveyed. (See Annot., 39 A.L.R.3d 14, 59-68 (1971).) In Illinois, however, and by the weight of authority in other jurisdictions, the owner of property has an absolute right to dispose of his property during his lifetime in any manner he sees fit, and he may do so even though the transfer is for the precise purpose of minimizing or defeating the statutory marital interests of the spouse in the property conveyed. (*Padfield v. Padfield* (1875), 78 Ill. 16; *Blankenship v. Hall* (1908), 233 Ill. 116; *Hoeffner v. Hoffner* (1945), 389 Ill. 253; Annot., 39 A.L.R.3d 14 (1971); Annot., 49 A.L.R.2d 521 (1956).)

Such a gift or transfer is not vulnerable or subject to attack by the surviving spouse unless the transaction is a sham and is "colorable" or "illusory" and is tantamount to a fraud. *Holmes v. Mims* (1953), 1 Ill. 2d 274.

The general rule stated by this court in *Holmes* is widely accepted (see Annot., 49 A.L.R.2d 521 (1956)) and has been generally applied by the courts of this State. The difficulty arises, as is so often the case, in the application of the general rule. The use of the phrase "intent to defraud" is confusing and carries a connotation not relevant to the question to be resolved. When the cases discuss fraud on the marital rights of the surviving spouse, they are not considering fraud in the traditional sense. Also, a minority view, in considering whether there has been a fraud on the marital property rights, has held that any conveyance made with the intent to minimize or defeat the marital rights of the surviving spouse in the property conveyed is presumed fraudulent. As noted above, this is the rule followed in Missouri, and the rule that was followed by this court in *Rose,* applying Missouri law. In Illinois and in a majority of jurisdictions, however, as previously noted, such a conveyance is not presumptively a fraud on the surviving spouse.

Although not applicable to this case, Public Act 80—737, approved and effective September 16, 1977 (Ill. Rev. Stat. 1977, ch. 110½, pars. 601, 602), provides:

> "Sec. 1. An otherwise valid transfer of property, in trust or otherwise, by a decedent during his or her lifetime, shall not, in the absence of an *intent to defraud,* be invalid, in whole or in part, on the ground that it is *illusory* because the deceased retained any power or right with respect to the property.
>
> Sec. 2. This Act takes effect upon becoming a law and applies to savings account trusts established on or after its effective date, and as to all other transfers this Act is *declaratory of existing law.*" (Emphasis added.)

This enactment has thus retained "intent to defraud" as

necessary to be established in proving the invalidity of a transfer on the ground that it was illusory. The Act also states that except as to savings account trusts (Totten trusts) its requirement is declaratory of existing law. What effect the amendment had on our holding in *Montgomery* is not before us.

Since "intent to defraud" in the context of these cases does not carry the traditional meaning of fraud, and since a property owner may convey his property for the precise purpose of defeating his spouses's marital property rights, the meaning of "intent to defraud" must be construed in connection with the words "illusory" and "colorable" with which it is usually associated in the cases cited. It has been suggested that the intent by which a transfer is to be tested should not be stated in the confusing terms of "intent to defraud," but it should be tested by the intent of the donor either to retain or to part with the ownership of property. Smith, *The Present Status of "Illusory" Trust—The Doctrine on Newman vs. Dore Brought Down to Date,* 44 Mich. L. Rev. 151 (1945).

The cases do not always differentiate between the terms "illusory" and "colorable." However, it is acknowledged, within the sphere of the subject that we are now discussing, that an illusory transfer is one which takes back all that it gives, while a colorable transfer is one which appears absolute on its face but due to some secret or tacit understanding between the transferor and the transferee the transfer is, in fact, not a transfer because the parties intended that ownership be retained by the transferor. 44 Mich. L. Rev. 151, 153, 162 (1945).

The intent to defraud is found in the nature of the transfer, whether it be illusory or colorable. In either event the transfer is a fraud on the marital rights because the transferor in reality had no intent to convey any present interest in the property but, in fact, intended to retain complete ownership. Although the spouse's marital rights can be defeated by an actual transfer, a purported transfer

whereby the owner does not intend to convey a present interest, but intends to retain ownership, is evidence of an intent to defraud. See *Newman v. Dore* (1937), 275 N.Y. 371, 9 N.E.2d 966.

In *Toman v. Svoboda* (1976), 39 Ill. App. 3d 394, the appellate court carefully analyzed the problems involved in considering *inter vivos* transfers and reached what we find to be an acceptable understanding of the determinative factor. The court stated:

> "The confusing factor is that Illinois and the majority of American States also examine the gift looking for what they unfortunately also call fraudulent circumstances, but by which they mean circumstances indicating that the gift was not a *real* gift because there was no present donative intent (that is, no donative intent of any kind or, at most, a mere testamentary, as distinguished from a present, donative intent), for lack of which the alleged gift was simply a sham or a merely colorable transfer of legal title." (Emphasis in original.) (39 Ill. App. 3d 394, 399.)

The court then mentioned some of the circumstances discussed in *Montgomery* which have a bearing upon the intent of the donor in making the *inter vivos* transfer and stated:

> "All these circumstances are relevant to the existence of an intent to defraud the surviving spouse of his or her statutory marital right *by making a sham or merely colorable inter vivos donative transfer,* which *is* a sham or merely colorable because it lacks the essential element of a present donative intent; either there is no donative intent of any kind, or there is at most a mere *testamentary* donative intent. The fraud *** relates to the absence of a present donative intent, not to the presence of an intent or

purpose to minimize or defeat the statutory marital right of the now surviving spouse." (Emphasis in original.) (39 Ill. App. 3d 394, 399-400.)

The court then considered the effect of the retention by the donor of the present benefits in the property and stated:

"But, where the donor does reserve to himself the life estate in the whole subject matter of the gift, the existence of his *present* intent to give now the *future* fee interest in the subject matter of the gift must be subjected to special scrutiny to make sure that his donative intent *is* present and not merely testamentary." (Emphasis in original.) (39 Ill. App. 3d 394, 400.)

The court further stated:

"[W]e agree that such retention is highly relevant on the issue of the existence of a *present* donative intent. But such evidence is far from controlling on that issue, because it is at least equally compatible with the retention by the donor-spouse of a present life estate in the shares, so that the precise subject matter of the gift which the donor-spouse presently intended to give was, not the full present fee interest in the shares, but rather the vested *future* fee interest *only*." (Emphasis in original.) 39 Ill. App. 3d 394, 401.

We conclude that an *inter vivos* transfer of property is valid as against the marital rights of the surviving spouse unless the transaction is tantamount to a fraud as manifested by the absence of donative intent to make a conveyance of a present interest in the property conveyed. Without such an intent the transfer would simply be a sham or merely a colorable or illusory transfer of legal title.

In *Farkas v. Williams* (1955), 5 Ill. 2d 417, this court

considered the validity of certain *inter vivos* trusts as against the contention that the transfers were testamentary in nature. In that case the settlor had designated himself as trustee for Richard J. Williams. He retained the benefits and control of the trust during his lifetime and retained the power to revoke the trust and also the power to dispose of the assets of the trust. This court stated that if no interests passed under the trusts to the beneficiaries before the death of the settlor then the trusts are testamentary and invalid. The court, however, held that the trusts were not testamentary in nature, stating:

"But considering the terms of these instruments we believe Farkas did intend to presently give Williams an interest in the property referred to. For it may be said, at the very least, that upon his executing one of these instruments, he showed an intention to presently part with some of the incidents of ownership in the stock. Immediately after the execution of each of these instruments, he could not deal with the stock therein referred to the same as if he owned the property absolutely, but only in accordance with the terms of the instrument. *** Thus assuming to act as trustee, he is held to have intended to take on those obligations which are expressly set out in the instrument, as well as those fiduciary obligations implied by law. In addition, he manifested an intention to bind himself to having this property pass upon his death to Williams, unless he changed the beneficiary or revoked the trust ***.

It seems to follow that what incidents of ownership Farkas intended to relinquish, in a sense he intended Williams to acquire. That is, Williams was to be beneficiary to whom Farkas was to be obligated, and unless Farkas revoked

the instrument in the manner therein set out or the instrument was otherwise terminated in a manner therein provided for, upon Farkas' death Williams was to become absolute owner of the trust property. It is difficult to name this interest of Williams, nor is there any reason for so doing so long as it passed to him immediately upon the creation of the trust." 5 Ill. 2d 417, 421-22.

Thus the appellate court in *Toman* applied a present-donative-intent test in determining whether the transfer constituted a fraud on the surviving spouse's property rights similar to the intent test this court applied in *Farkas* in determining whether the *inter vivos* trusts in that case were effective transfers, or whether they were testamentary in nature and invalid. It would appear to be logical that similar criteria should govern both situations. A surviving spouse only has an interest in the property which becomes a part of the decedent's estate. (Ill. Rev. Stat. 1977, ch. 110½, pars. 2—1, 2—8.) If the interest in the property passed under a valid *inter vivos* conveyance it would then not become a part of the decedent's estate and the surviving spouse would have no interest in it. This is in accord with the reasoning of the much cited case of *Newman v. Dore* (1937), 275 N.Y. 371, 9 N.E.2d 966.

With these considerations in mind, we now turn our attention to whether the transfers in question are vulnerable to attack by the surviving spouses, first in Johnson v. La Grange State Bank, and then in Havey v. Patton.

We are satisfied that the *inter vivos* trust created by Eleanor Johnson was not colorable, illusory, or tantamount to fraud. The fact cannot be denied that as trustee of a revocable trust she retained a significant degree of control over the trust assets. However, the form of control which the donor retains over the trust does not make it invalid. (*Gurnett v. Mutual Life Insurance Co.* (1934), 356 Ill. 612.) In addition, it is well established that the

retention by the settlor of the power to revoke, even when coupled with the reservation of a life interest in the trust property, does not render the trust inoperative. *Kelly v. Parker* (1899), 181 Ill. 49; *Bear v. Millikin Trust Co.* (1929), 336 Ill. 366.

Nevertheless, the facts of a particular case may show that the trust in question, while ostensibly valid, is in actuality a sham transaction, essentially testamentary in character, and therefore invalid. In this case, the facts do not support such a conclusion. Mrs. Johnson was certainly well aware of the fact that her husband had a net worth of over $2,000,000, and was, and would most likely continue to be, well provided for. She was concerned, however, with the welfare of certain of her relatives, particularly her mother, who was dependent on her. She formalized a declaration of trust, with advice of counsel, for the benefit of her relatives. The declaration of trust immediately created an equitable interest in the beneficiaries, although the enjoyment of the interest was postponed until Mrs. Johnson's death and subject to her power of revocation. This, however, did not make the transfer illusory. And the power of control that she had as trustee was not an irresponsible power; she was charged with a fiduciary duty in respect to the beneficiaries' interest, and her management and administration of the assets in trust could only be exercised in accordance with the terms of the trust. See *Farkas v. Williams.*

The conclusion of the appellate court that Mrs. Johnson parted with nothing during her life (50 Ill. App. 3d 830, 842) is incorrect. The trust directed that the trustee, in event of the grantor's disability, was to use the income and principal of the trust estate for the grantor's benefit and for the benefit of any person dependent on her. The trust instrument provided that the successor trustee was to assume the office of trustee during her lifetime should she become disabled, and the instrument

set forth the means of determing her disability. There is no evidence that Mrs. Johnson made any withdrawals from the principal or otherwise exercised any of her reserved powers to deplete the trust assets. These facts tend to show that she intended to make a valid and effective transfer at the time her declaration of trust was executed. We find that a valid transfer was effected under the trust.

We have yet to address two additional points raised by the appeal in Johnson v. La Grange State Bank. The plaintiff argues that a constructive trust should be imposed on the trust property because the assets were fraudulently obtained from the plaintiff. In this regard, he argues that he parted with the assets in the expectation that they would be returned to him upon his wife's death.

The allegations of the amended complaint, which would support the imposition of a constructive trust, were found to be not supported by the evidence both in the trial court and in the appellate court. We agree with this determination. The Johnsons had a warm and loving marriage, and the evidence shows that Johnson's frequent gifts to his wife were out of his concern for her welfare. They were made with no strings attached. He had some knowledge of his wife's contact with her attorneys for the purpose of preparing a trust instrument and a will, and the plaintiff elected not to involve himself in the matter. These facts, along with other evidentiary matter in the record, show that there was an absence of fraud in this case. The plaintiff's attempt to impose a constructive trust on the assets in question must fail.

Following the entry of judgment in favor of the defendants in the trial court, the guardian *ad litem* and La Grange State Bank petitioned the court for allowance of fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41). The court allowed the motions and assessed fees against the plaintiff. Section 41, at the time pertinent to this case, provided:

"Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the .party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."

This section was amended effective September 19, 1976, eliminating the requirement that the allegations be made "not in good faith." 1976 Ill. Laws 1349, 1358.

Section 41, as previously composed, contained three specific requirements: (1) that the allegations be made without reasonable cause, (2) that they be made not in good faith, and (3) that the allegations be found to be untrue. It has been held by our appellate courts that section 41, being penal in nature, can be invoked only in cases falling strictly within its terms and that each of the three requirements stated above must be proved. (*Sarelas v. Alexander* (1971), 132 Ill. App. 2d 380, 387; *Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943; *Dudanas v. Plate* (1976), 44 Ill. App. 3d 901, 910.) It has also been held that the burden is on the petitioner seeking to invoke section 41 to prove each of the three elements. *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 979.

Although the allowance of fees under section 41 is discretionary with the trial court, bad faith being one of the required findings, the court can only allow fees when the record discloses not only that the allegations are untrue, but also that they were not made in good faith (*Dudanas v. Plate*). In considering section 41 the appellate courts have stated that it will be assumed that the attorneys, in filing pleadings, have due regard for their duties and responsibilities as officers of the court, and they are permitted to exercise broad discretion based upon an honest judgment from the facts presented to them. *Williams v. City of Chicago; Horween v. Dubner* (1965), 68

Ill. App. 2d 309, 320.

Under the construction that has heretofore been placed on section 41, we find that the trial court abused its discretion in awarding fees against the plaintiff under section 41. The trial ended at the close of plaintiff's case. Thus, petitioners offered no evidence during the trial. At the hearing on the petition for fees only evidence relating to the amount of fees was offered. The remainder of the hearing was made up of argument of the attorneys and references to the trial itself. Thus, the petitioner has offered no proof in support of the three essentials of section 41.

As for the trial itself, the evidence presented consisted primarily of the testimony of the plaintiff. Although this evidence may have been insufficient to prove the allegations of the amended complaint, it was not sufficient to support a finding that the allegations were made without reasonable cause or that they were made in bad faith. The attorneys for the plaintiff had originally filed a one-count complaint alleging that the trust was illusory and colorable and did not charge common law fraud. At the hearing on the motion to dismiss it appears that the court made some observation as to the type of allegations necessary to support a cause of action based on fraud. Thereafter, the attorneys for the plaintiff filed a three-count amended complaint contending, in addition to charges that the trust constituted an illusory or colorable transfer, an additional count III alleging the elements of common law fraud. There is nothing in the record to indicate that the amended complaint was not filed as an effort made in good faith by plaintiff's counsel to attempt to state a cause of action to uphold their client's claim. It was not appropriate to assess fees and costs against plaintiff.

The principles set forth above relevant to the validity of the transfer under scrutiny in La Grange State Bank v. Johnson apply in Havey v. Patton. The dispositive inquiry

is whether the deposit of funds in the joint accounts created by Myra Havey in which she named her sister-in-law joint tenant qualify as complete and effective *inter vivos* transfers, or whether the establishment of the accounts was illusory or colorable and in the nature of a sham transaction. The appellate court affirmed the trial court's finding that there was sufficient donative intent to sustain the gift inherent in the joint account. We affirm the appellate court.

The fact that Mrs. Havey contributed all the funds to the accounts and retained the right to withdraw them does not negate the existence of donative intent required to validate a gift. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 71-72.) Thus, as far as the present case is concerned, we do not believe that Mrs. Havey's right to use the funds, or her direction that her sister-in-law have no immediate use of the funds, demonstrates a lack of donative intent. Rather, where joint accounts are concerned, the creation of the joint tenancy accounts is evidence of donative intent and is sufficient to establish ownership in the survivor upon the death of the original owner, in absence of evidence to the contrary. *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 187; *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 72.

The joint account agreements were made pursuant to the provisions of "An Act to revise the law in relation to joint rights and obligations." (Ill. Rev. Stat. 1971, ch. 76, par. 2), and by their very terms indicated the existence of a valid gift. Mrs. Havey was terminally ill at the time she created the accounts, and intended for her sister-in-law, rather than her husband, from whom she had separated, to receive the funds therein. As we have indicated, the fact that the donor executes a valid gift for the express purpose of defeating the rights of the surviving spouse does not make the transfer vulnerable to attack by such spouse. She needed money enough to sustain herself through the period of her terminal illness, a period of about four

months, and then intended for her sister-in-law to have enjoyment of the funds. Under these circumstances, it cannot be said that the accounts were made solely for the depositor's convenience. Mrs. Havey accomplished her goal of intending to create a valid present interest for her sister-in-law in the funds.

In summation, the holding of the appellate court in Johnson v. La Grange State Bank is reversed except insofar as it reverses the order of the circuit court of Cook County which assessed attorney's fees and costs under section 41 of the Civil Practice Act, and in that regard, the appellate court is affirmed. The holding of the appellate court in Havey v. Patton is affirmed.

*49875-49876 — Affirmed in part and reversed in part.*
*50207 — Judgment affirmed.*