630 N.E.2d 87 (1993)
257 Ill. App.3d 291
196 Ill.Dec. 390
In re the ESTATE OF Chester MOCNY, Deceased (Joan Mocny, Petitioner-Appellant, Sharon Schipiour, Lynda Dillon a/k/a Linda Dillon and Warren Mocny, Respondents-Appellees).
Nos. 1-91-1034, 1-92-1990.
Appellate Court of Illinois, First District, Third Division.
December 29, 1993.
*89 Mason D. Sullivan, Chicago, for petitioner-appellant.
Williams & Marcus, Ltd., Chicago (Michael Fries, of counsel), for respondents-appellees.
Justice RIZZI delivered the opinion of the court:
This is a consolidated appeal from separate orders of dismissal entered by the trial courts in the probate and law divisions of the circuit court of Cook County. We affirm. We address the appeal emanating from the probate division first.
Petitioner, Joan Mocny, brought a petition for recovery citation in the probate division against her deceased husband's three children. Her proposed fourth amended petition alleged that her deceased husband and his three children have defrauded her of her marital right as a surviving spouse to share in his estate. The trial court, however, dismissed petitioner's first four petitions, and denied petitioner leave to file a fourth amended petition, ruling that petitioner failed to allege sufficient facts to state a cause of action. When petitioner elected to stand on her proposed fourth amended petition, the trial court dismissed the petition *90 with prejudice. Petitioner now appeals, arguing that her fourth amended petition contained sufficient facts to state a cause of action for "fraud on a marital right." We disagree, and affirm the ruling of the trial court.
On appeal from a dismissal for failure to state a cause of action, our sole task is to determine whether the allegations of the petition or complaint, when viewed in the light most favorable to the complainant, are sufficient to state a cause of action for which relief may be had. Dee v. Peters (1992), 227 Ill.App.3d 1030, 169 Ill.Dec. 235, 591 N.E.2d 115. Petitioner alleged the following facts which for the purpose of our review are accepted as true.
On September 24, 1986, Chester Mocny died testate. Surviving him were his second wife, Joan Mocny, and his three children from his first marriage; Sharon Schipiour (Sharon), Lynda Dillon (Lynda) and Warren Mocny (Warren). Decedent's will provided that upon his death one-half of his estate shall go to his second wife, Joan Mocny, and the remaining one-half shall go to his three children in equal shares. The will was admitted to probate. At the time of decedent's death, however, there were no assets in his estate.
Sometime during decedent's life, he transferred three bank accounts, over which he previously had enjoyed sole ownership, into joint tenancy with himself and his two daughters. Decedent, however, did not name his son, Warren, as a joint tenant on any of the accounts. Petitioner was unaware of the existence of the original accounts and of the subsequent transfers.
Upon decedent's death, the bank accounts passed directly to his daughters due to their right of survivorship as joint tenants. These bank accounts, therefore, were not included in decedent's estate. Additionally, it appears from the petition that at least one of the children was a named beneficiary of a life insurance policy insuring decedent's life. When decedent died, these proceeds were paid to one or more of his children. As such, these proceeds were not included in decedent's estate either. There were also other assets in which decedent had an ownership interest during his life, including real estate in Wisconsin that passed directly to one or more of his children upon his death. These assets were not included in decedent's estate either.
Sometime prior to his death, decedent orally instructed Sharon to distribute on his death the above assets equally among herself and her two siblings. After decedent's death, Sharon, Lynda and Warren divided the bank accounts, life insurance proceeds and other assets equally among themselves.
In sum, petitioner alleges that through various inter vivos transfers, totaling $50,000, decedent arranged that upon his death his estate would contain no assets. With no assets in the estate, there was nothing to distribute under the will or pursuant to statute. Petitioner alleged that the various inter vivos transfers defrauded her of her marital right to share in decedent's estate, and sought to recover all assets divided pursuant to decedent's oral instructions.
The issue before us is whether petitioner has pleaded sufficient facts to state a cause of action for what has been misleadingly termed "a fraud on a marital right." Misleadingly, because fraud is not an element of this cause of action. We, therefore, begin with an examination of this creature of the law known as "a fraud on a marital right."
The marital right in question is the right of a surviving spouse to share in the estate of his or her deceased spouse. This right was created by statute which provides in relevant part:
5/2-8. Renunciation of will by spouse
§ 2-8. Renunciation of will by spouse.
(a) If a will renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: 1/3 of the entire estate if the testator leaves a descendant or ½ of the entire *91 estate if the testator leaves no descendant.[1] 755 ILCS 5/2-8 (West 1992).
It should be noted that prior to the testator's death, the spouse possesses absolutely no claim with respect to this statute against any of the testator's individually held assets. Prior to the death of the testator, the spouse's interest exists only as an expectancy. Toman v. Svoboda (1976), 39 Ill.App.3d 394, 398, 349 N.E.2d 668, 672.
The paramount rule, therefore, grants an owner of property the absolute right to dispose of his property during his lifetime in any manner he sees fit. Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 357, 22 Ill.Dec. 709, 716, 383 N.E.2d 185, 192; Payne v. River Forest State Bank & Trust Co. (1980), 81 Ill.App.3d 1128, 1130, 37 Ill.Dec. 136, 138, 401 N.E.2d 1229, 1231; Toman, 39 Ill.App.3d at 398, 349 N.E.2d at 673. A property owner may even transfer property with the expressed intent of minimizing or defeating the statutory marital interest of his or her spouse to share in the property owner's estate. Johnson, 73 Ill.2d at 357, 22 Ill.Dec. at 716, 383 N.E.2d at 192; Payne, 81 Ill.App.3d at 1130, 37 Ill.Dec. at 138, 401 N.E.2d at 1231; Toman, 39 Ill.App.3d at 398, 349 N.E.2d at 673. The proposition that a property owner may intentionally defeat this statutory interest was plainly articulated by the court in Toman:
[T]he owner and now deceased spouse may completely defeat the statutory marital right of the surviving spouse simply by arranging not to be the owner of any property at the date of his or her death by reason of having made real ... inter vivos transfers of all of his her own property to persons other than the surviving spouse. Nor does the statutory marital right ... impose any duty on the owner spouse to deal with his or her property during the lifetime of both spouses in what may be regarded as a normal or reasonable course of dealing with one's own property. Toman, 39 Ill.App.3d at 398, 349 N.E.2d at 672.
When a property owner dies, however, this once absolute right is tempered by the statutory marital right of the surviving spouse. See 755 ILCS 5/2-8 (West 1992). Moreover, because a surviving spouse can renounce the testator's will and take pursuant to the applicable statutory share, this interest cannot be defeated by the decedent's will. See 755 ILCS 5/2-8. Even if a testator wills his or her entire estate to a person other than his or her spouse, the spouse acquires a ½ or a 1/3 share in the testator's estate. See 755 ILCS 5/2-8. Thus, the statute prevents a deceased property owner from doing by will what he or she was previously able to do during his or her lifetime via a valid inter vivos transfer, i.e. defeat the marital interest of the surviving spouse.
Particular facts, however, may show that an otherwise valid inter vivos transfer was in actuality a sham transaction and essentially a disposition by will. Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 364, 22 Ill.Dec. 709, 719, 383 N.E.2d 185, 195. Such a transfer, akin to a disposition by will, is invalid to defeat the statutory marital right of the surviving spouse. Johnson, 73 Ill.2d at 364, 22 Ill.Dec. at 719, 383 N.E.2d at 195. The assets transferred in this manner are instead considered part of the decedent's estate and are subject to the statutory marital right of the surviving spouse.
The Illinois General Assembly set forth the applicable test for determining when an inter vivos transfer is invalid to defeat the marital right of the surviving spouse. The pertinent statute provides:
25/1. Lifetime transfer of property with retained powers or rightsValidity
§ 1. An otherwise valid transfer of property, in trust or otherwise, by a decedent during his or her lifetime, shall not, in the absence of an intent to defraud, be invalid, in whole or in part, on the ground that it is illusory because the deceased retained any power or right with respect to the property.
25/2. Effective dateApplication of Act
§ 2. This Act takes effect upon becoming a law and applies to savings account *92 trusts established on or after its effective date, and as to all other transfers this Act is declaratory of existing law. 755 ILCS 25/1, 25/2 (West 1992) (emphasis added).
Thus, in order to successfully challenge an inter vivos transfer, a party must show intent to defraud.
Fraud in this context, however, bears little resemblance to the traditional common law fraud, which requires a material misstatement, inducement and reliance. Many courts have noted the resulting confusion, including the Illinois Supreme Court in Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 359, 22 Ill.Dec. 709, 716-17, 383 N.E.2d 185, 192-93. Unfortunately, this misleading nomenclature, which was a product of common law, found its way into the statutory language when the Illinois General Assembly enacted the statute which to a large extent codified existing case law. Furthermore, as seen below, the cause of action focuses not on fraud, but on present donative intent. Properly stated, the cause of action before us is not one for fraud, but one for illegally defeating a marital right.
In the present context, intent to defraud as interpreted by the Illinois Supreme Court refers to a transfer that is illusory or colorable. Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 359, 22 Ill.Dec. 709, 716-17, 383 N.E.2d 185, 192-93. A transfer which is illusory is one which takes back all that it gives. Johnson, 73 Ill.2d at 359, 22 Ill.Dec. at 717, 383 N.E.2d at 193. A transfer which is colorable is one which appears absolute on its face but due to some tacit or secret understanding between the transferor and the transferee, is in fact not a transfer because the parties intended that ownership be retained by the transferor. Johnson, 73 Ill.2d at 359, 22 Ill.Dec. at 717, 383 N.E.2d at 193. In either case, the question is really whether there was present donative intent, or instead the intent to retain complete ownership. Johnson, 73 Ill.2d at 359, 22 Ill.Dec. at 717, 383 N.E.2d at 193.
Where present donative intent exists, the transfer is valid and effective to defeat the marital interest. Johnson, 73 Ill.2d at 361, 22 Ill.Dec. at 718, 383 N.E.2d at 194. Where present donative intent is absent, the transfer is treated as a disposition by will and is not effective to defeat the marital interest. Johnson, 73 Ill.2d at 361, 22 Ill.Dec. at 718, 383 N.E.2d at 194.
Moreover, where decedent transferred assets into joint tenancy, there is a presumption of present donative intent. Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 368, 22 Ill.Dec. 709, 721, 383 N.E.2d 185, 197; Frey v. Wubbena (1962), 26 Ill.2d 62, 69-71, 185 N.E.2d 850, 855. This presumption can only be overcome by clear and convincing evidence to the contrary. Toman v. Svoboda (1976), 39 Ill.App.3d 394, 402, 349 N.E.2d 668, 675. And only evidence that the transfer was made solely to establish a convenience account will constitute clear and convincing evidence to the contrary. Johnson, 73 Ill.2d at 369, 22 Ill.Dec. at 721, 383 N.E.2d at 197; Toman, 39 Ill.App.3d at 402, 349 N.E.2d at 675.
A convenience account is an apparent joint account which the creator of account established to enable another tenant to write checks from the account at the direction and for the benefit of the creator. In re Estate of Harms (1992), 236 Ill.App.3d 630, 177 Ill.Dec. 256, 603 N.E.2d 37; In re Estate of Kaplan (1991), 219 Ill.App.3d 448, 458-59, 162 Ill. Dec. 149, 155, 579 N.E.2d 963, 969.
To state a claim, generally, for a cause of action based on invalidly defeating a marital right, a party must plead sufficient facts to show a transfer of assets and an absence of present donative intent accompanying that transfer. Payne v. River Forest State Bank & Trust Co. (1980), 81 Ill.App.3d 1128, 1133-34, 37 Ill.Dec. 136, 141, 401 N.E.2d 1229, 1234. And where present donative intent is presumed, as in the case of a transfer into joint tenancy, a party must plead sufficient facts to overcome the presumption. Accordingly, a party must plead facts showing that the transfer was made solely to establish a convenience account.
The Illinois Supreme Court in Johnson v. La Grange State Bank confronted a situation similar to the present case. Johnson, 73 Ill.2d 342, 22 Ill.Dec. 709, 383 N.E.2d 185. The Johnson opinion consolidated two cases. *93 In the second case, Havey, the decedent had transferred savings accounts into joint tenancy. Mrs. Havey had been married to her husband for 35 years. When she discovered she was terminally ill, she established joint savings accounts with her sister-in-law and created a joint tenancy in real estate with her sister-in-law. Her sister-in-law, however, contributed no funds for the accounts or for the real estate. Moreover, her sister-in-law had no authority to withdraw any of the funds for her own use. Johnson, 73 Ill.2d at 352-53, 22 Ill.Dec. at 713-14, 383 N.E.2d at 189-90.
When Mrs. Havey died testate, her estate contained only $4,000. Her husband brought an action against the sister-in-law alleging that he was fraudulently deprived of his marital right to share in the decedent's estate. The trial court upheld the transfers, ruling that sufficient donative intent existed to sustain the gift. The appellate court affirmed. Johnson, 73 Ill.2d at 353, 22 Ill.Dec. at 714, 383 N.E.2d at 190.
The supreme court affirmed the appellate court's decision, holding that the lack of the sister-in-law's authority to withdraw funds from the accounts did not demonstrate that the accounts were set up solely as a convenience account for Mrs. Havey. Johnson, 73 Ill.2d at 369, 22 Ill.Dec. at 714, 383 N.E.2d at 197.
In the present case, petitioner argues that decedent's oral instructions demonstrate that decedent lacked present donative intent when transferring the assets at issue. Rather, the decedent's intention, petitioner contends, was to have the assets divided three ways upon his death.
As to the transfer of the bank accounts, petitioner's argument ignores the presumption attendant to a transfer of assets into joint tenancy and what is necessary to overcome that presumption. Petitioner has failed to allege any facts that would support a finding that these accounts were set up solely for the convenience of decedent. The existence of decedent's oral instructions simply do not support a finding that the accounts were established to enable the daughters to write checks at the direction and for the benefit of decedent.
Furthermore, the existence of decedent's oral instructions is insufficient to show an absence of present donative intent accompanying the transfer of the Wisconsin real estate. Petitioner did not address the crucial question of whether decedent retained complete control. This is particularly so where petitioner has failed to allege when property was transferred, to whom it was transferred and when the oral instructions were given.
Lastly, the proceeds of a life insurance policy are not vulnerable to being challenged in a cause of action for illegally defeating a marital right. Every life insurance policy is by its nature testamentary. Therefore, to make the proceeds of a life insurance policy susceptible to an attack for being essentially testamentary would divest all non-spouse beneficiaries in favor of the surviving spouse.
Petitioner also filed a complaint in the law division entitled tortious interference with an expectancy. In this complaint petitioner alleged essentially the same facts as she did in her probate petition and they need not be repeated here. In order to state a cause of action for tortious interference with an expectancy, a party must allege facts showing (1) the existence of her expectancy; (2) that defendants intentionally interfered with her expectancy; (3) the interference involved conduct tortious in itself such as fraud, duress or undue influence; (4) that there is a reasonable certainty that expectation would have been realized and (5) damages. Nemeth v. Banhalmi (1981), 99 Ill. App.3d 493, 55 Ill.Dec. 14, 425 N.E.2d 1187.
Lacking most notably from petitioner's complaint are allegations that the interference involved tortious conduct in itself. Petitioner has failed to allege any facts to state a claim for fraud. While, petitioner has alleged that defendants exercised undue influence over decedent, this allegation is conclusory and is unsupported by any allegation of fact. Furthermore, for the reasons stated above in the probate analysis, petitioner has failed to sufficiently plead a cause of action for illegally defeating a marital right. Finally, no other tortious conduct is alleged. *94 Therefore, petitioner has failed to plead a necessary element of tortious interference with an expectancy.
For the foregoing reasons, the judgments of the circuit court in the probate and law divisions are affirmed.
AFFIRMED.
CERDA and GREIMAN, JJ., concur.
NOTES
[1] A comparable marital right exists for the surviving spouse of an intestate decedent. See Montgomery v. Michaels (1973), 54 Ill.2d 532, 301 N.E.2d 465.