DELLA HUDDLESTON SMITH v. P. T. SMITH *et al.*

(No. 6850)

Submitted January 28, 1931.   Decided February 10, 1931.

*Poffenbarger & Poffenbarger* for appellants.
*Price, Smith & Spilman, Lillian S. Robertson, E. E. Robertson, J. M. Life,* and *S. P. Bell,* for appellee.

WOODS, JUDGE:

Defendant, P. T. Smith, complains of a decree of the circuit court of Kanawha county granting an absolute di-

vorce and other relief to the wife, Della Huddleston Smith. The couple were married February 22, 1922. Both had been previously married (their respective spouses having died some years prior to said date) and had grown children of their own. They lived together at the wife's home in Spencer, until February, 1926, the date of desertion. At that time the couple were in Huntington for the purpose of collecting two $1,000.00 notes, and $400.00 interest, due Mrs. Smith. The notes were turned over to defendant at his request, for collection, and plaintiff never saw or heard from him for approximately two months thereafter.

In addition to desertion and cruel and inhuman treatment, a charge of adultery was made against Smith, and the further allegation that he had defrauded plaintiff of the money collected at Huntington, and that he had made divers transfers of property for the purpose of defeating the plaintiff's dower rights. The answer denies the various allegations and charges the wife with adultery. This allegation is likewise denied on the part of the wife.

After hearing the evidence, which in many particulars was very conflicting, the divorce commissioner found, among other things, that the plaintiff owns a small amount of property from which she receives some income; that the defendant P. T. Smith owns considerable real estate in Kanawha county and much personal property; that he has his real estate in the names of his children by a former marriage, transacting his business in their names; that a short time prior to his marriage with the plaintiff he conveyed to his daughter, the defendant Ethel Thompson, all his real estate in Kanawha county, without consideration, and in contemplation of his marriage with the plaintiff, and without her knowledge, and with intent to keep said real estate free of her marital rights; that after said conveyance he dealt with such real estate as his own, collecting the rents therefrom and negotiating sales thereof and collecting the purchase price therefor; that all of said real estate, except a tract of 193 acres of land on Little Sandy creek, in Elk district of Kanawha county, has been conveyed by the said Ethel Thompson and husband to persons not made parties defendant to this

suit and who are possibly innocent purchasers for value; that said tract of 193 acres of land was conveyed by the said Ethel Thompson and husband to A. P. Chandler, who conveyed it to E. S. Saunders, who conveyed it to Elvin Smith, Ethel Thompson, Howard Smith, Basil Smith and Delthia Smith, children of P. T. Smith by a former marriage; that said land is the property of P. T. Smith; that said P. T. Smith subsequent to his marriage with the plaintiff bought and paid for with his own money, certain real estate which he had conveyed to his son Elvin Smith; that the said P. T. Smith with his own money erected a dwelling house on said property so conveyed and has continually dealt with it as his own; and that he had said property conveyed to his said son with the intention of preventing the marital rights of the plaintiff from attaching thereto; and with respect to the character, conduct and habits of the plaintiff and the defendant P. T. Smith, that the character, conduct and habits of the plaintiff are good, and the character, conduct and habits of the defendant P. T. Smith are not good; that the plaintiff's charge of adultery has been established by the evidence, and that the evidence submitted on the part of the said defendant for the purpose of showing adultery on the part of the plaintiff is untrue and unworthy of belief; and that said defendant fraudulently obtained from the plaintiff two notes for the sum of $1,000.00 each, with $400 interest accrued thereon, which he collected and refused to account for to the plaintiff; and that said defendant systematically took advantage of the confidential relation of husband and wife for the purpose of cheating and defrauding the plaintiff. And the commissioner recommends that (1) a decree from the bonds of matrimony be awarded to the plaintiff; (2) that defendant P. T. Smith be required to pay alimony to the plaintiff in the amount of $50.00 a month until the further order of the court; (3) the defendant P. T. Smith be required to pay to the plaintiff the sum of $2,400; with interest thereon from the 20th day of February, 1926, in payment of two notes owned by the plaintiff which the defendant refused to pay to her; (4) the deed made by the defendant P. T. Smith to Ethel Thompson for his real estate in Ka-

nawha county be set aside in so far as the rights of the plaintiff are concerned as to the tract of 193 acres of land on Little Sandy creek, in Elk district, Kanawha county; (5) the parcel of land described as Lot No. 1 of the Eastwood Tract conveyed to Elvin Smith be decreed to be the property of the defendant P. T. Smith; and (6) the alimony and other sums decreed to be paid by the defendant P. T. Smith to the plaintiff be made liens on said real estate.

The defendant P. T. Smith and Ethel Thompson, a daughter, filed exceptions to the report attacking every material finding of fact. After a consideration of the report and the several exceptions, the chancellor approved and confirmed the report, and carried into effect the recommendations contained therein, except as to payment of alimony, and also allowed certain fees to the divorce commissioner and plaintiff an attorney's fee of $500.00.

The appellant would have us overthrow each and every finding of the commissioner. While it is true that only the officer making the arrest on the adultery charge testified as to the act, in view of the evidence we cannot say that the commissioner was wrong in so finding as against the defendant's denial. The accomplice was not called to deny the charge. Defendant admitted facts sufficient to show an opportunity to commit the crime. He also appeared before the justice and paid fines for both parties, although at the time denying the act. The other matters in issue have evidence to support them, as well as evidence to the contrary. In view of the conflicting nature of the testimony, and the commissioner's findings thereon, which have the approval of the chancellor, we are of opinion that the findings of fact must stand. *Linger v. Watson*, 108 W. Va. 180; *Davis v. Trust Co.*, 107 W. Va. 141; *Kincaid v. Evans*, 106 W. Va. 605; *McBee v. Deusenberry*, 99 W. Va. 176.

A special attack is made on the chancellor's authority, in this suit, to impress the two conveyances hereinbefore referred to, in so far as the rights of plaintiff are concerned, with the payment of the $2,400.00 indebtedness in her favor.

We have held that a voluntary conveyance made by a man under engagement to marry, before and in contemplation of

marriage, without the knowledge of his intended wife, with intent to free the land of the marital rights of the wife, is void as to her dower rights and to the alimony decreed against him in suit for divorce. *Goff* v. *Goff*, 60 W. Va. 9; 27 C. J. 478. The deed for the 193 acres made prior to marriage, but after engagement, according to the evidence of the wife, was made with intent to defraud the plaintiff of her dower rights in said land, and being so, is, therefore, fraudulent and void as to the subsequent as well as existing creditors. *Davis* v. *Halstead*, 70 W. Va. 572; *Smith* v. *Johnson*, 78 W. Va. 395; *Voss* v. *King*, 33 W. Va. 236. The same situation obtains in the conveyance of the Eastwood property. This was purchased out of defendant's own funds and the deed therefor made to his son, Elvin. It was likewise made prior to the time that he became indebted to the wife. The law casts the burden upon the son to show a valid consideration and make everything clear. *Stauffer* v. *Kennedy*, 47 W. Va. 714; *Himan* v. *Thorn*, 32 W. Va. 507. In this he failed. We do not dispute the theory (which has no foundation in the testimony of either father or son) that defendant could give away his personalty. However, the fact that defendant maintained dominion over the property, which was supposedly purchased for his son, made it, in the eyes of the law, his own property, and therefore subject to dower.

Courts of equity have, in proper cases, assumed the power of restoring to the wife the whole or a portion of the property which by the marriage became vested in her husband. Property belonging to the wife before marriage, but to which the husband has secured title by unfair means, should be restored to her upon a dissolution of the marriage, because of the husband's misconduct. 19 C. J. 335, sec. 778. The Supreme Court of Wisconsin held that the above rule would also entitle a wife to a decree where a wife at the husband's solicitation loaned certain of her separate funds to his friends, and took securities therefor payable to both husband and wife, jointly. *Pauly* v. *Pauly*, 69 Wis. 419.

As provided in Code, chapter 64, section 11, the court is entitled to make any allowance and disposition of the realty of both parties that it may think proper under the circum-

stances of the particular case. Referring to our divorce statute, this Court said in *Boger* v. *Boger*, 86 W. Va. page 593: "The statute is not amendatory of either the common or ecclesiastical law. It is full, complete and comprehensive, covering every phase of divorce; wherefore it was manifestly designed by the legislature to be a substitute for all other law applicable to that subject. * * * It would be difficult to find in our Code or any other a more comprehensive statute. It covers the entire subject fully and in detail. * * * Equity procedure gets it by express legislative adoption, not by interpretation." So in *Philips* v. *Philips*, 106 W. Va. 107, in construing section 11 of this statute, it is said: "The clear purpose of this section was to give the court power to determine and adjudicate the questions naturally arising upon a dissolution of marriage or the granting of a divorce *a mensa et thoro*, or *a vinculo matrimonii*, concerning the estate and maintenance of the parties or either of them." So, if the court cannot do this under its general equity powers, the statute gives that power. Such construction is buttressed by consideration of convenience and public policy. The court in the last mentioned case further said: "It is not perceived why the court in granting divorce should be confined to curtesy and dower arising out of the marriage relation alone, thereby requiring the parties to litigate their respective rights to the property acquired by them during their marriage in a separate suit. The policy of the law is to avoid a multiplicity of suits. No hardships or inconvenience would be imposed upon the parties in the divorce suit. To deny that relief would necessitate continued litigation, expenses and delays." Then, the $2,400.00 was the wife's money. Defendant secured possession of it by means of the intimate relationship of marriage. He did so fraudulently. Why should he not account for it in this suit?

The deeds, as we have already shown, were made with intent to defraud the plaintiff of her dower rights in the land, and are, therefore, fraudulent and void as to any debts due her. The divorce commissioner also found "that the defendant systematically took advantage of the confidential relationship of husband and wife for the purpose of cheating

and defrauding the plaintiff in every way he could." Yet the defendant, in support of his position that the chancellor had no right to impress the real estate in question with the $2,400.00 indebtedness, contends, in effect, that the failure of the divorce decree to award alimony amounted to an extinguishment of the dower right, and thereby automatically purged the conveyances of fraud. But, the fact that alimony was not awarded does not, in our opinion, disturb the sentence in the decree that the conveyances were fraudulent "in so far as the rights of the plaintiff are concerned." It recognizes not only fraud against dower but a general scheme on the part of the defendant to gain possession of the plaintiff's property as well. All the authorities hold that a conveyance made under the circumstances, as here, if made with the design to defeat his wife's marital right, is void. The fraudulent intent in all such cases being the true test of the validity of the transaction. So, the failure on the part of the chancellor to allow alimony, whether correctly or incorrectly, according to equity and right, cannot purge the voluntary conveyances aforesaid of their fraud, and defeat the lien thereon to secure payment of the $2,400.00 item. As suggested by counsel for plaintiff, the land in reality is now in the hands of the defendant, and therefore subject to his debts.

Should the court have allowed alimony in its decree? This is made a cross-assignment of error by the plaintiff. The fact that the decree, while disposing of all other points, was silent on the question of alimony, had the effect as if the decree had expressly denied it. *Spain* v. *Spain*, 177 Iowa 249; *Howell* v. *Howell*, 104 Cal. 45; *Kamp* v. *Kamp*, 59 N. Y. 212; *Jordan* v. *Jordan*, 53 Mich. 550. Doubtless the chapter and section of the Code heretofore discussed empowers the court in a case of absolute divorce to adjust the estates of the parties, and, to that end, to allow the wife by decree something out of the estate of the husband, under the designation of alimony. *Sperry* v. *Sperry*, 80 W. Va. 142. Though the same authority holds that to decline such relief is not error, on the ground that as a general rule alimony is payable out of the earnings of the husband. At common law, an absolute divorce terminated the duty of the husband to support the

divorced wife. Our statute modifies it to the extent just adverted to. Whether it should do so depends upon the circumstances of the case. The learned chancellor, in view of the severance of the marital relations and the allowance of a lien upon the husband's property to secure payment of certain sums decreed the wife, the wife's separate property, and all the circumstances of the case, was evidently of opinion that no alimony be allowed. We would not reverse the case, nor send it back on that account.

More has been said than was really required, but for the earnestness and ability with which counsel for the defendant pressed his cause both in brief and at bar. Our conclusion, under all the facts and circumstances of this case, is that the decree below should be affirmed.

*Affirmed.*