## UNITED STATES v. SPANGLER et al.

Condemnation No. 1068.

United States District Court
S. D. West Virginia.

Nov. 6, 1950.

John R. Dyer, Special Attorney, Department of Justice, Charleston, W. Va., for petitioner.

Everett L. Phillips, Matoaka, W. Va., for defendant R. H. Hughes.

MOORE, District Judge.

The United States of America has paid $1,650 into the registry of the court for its taking, by way of condemnation, of the fee simple title in a certain tract of land situate in Summers County, West Virginia, and owned by R. H. Hughes. R. H. Hughes and his brother, W. W. Hughes, owned the tract jointly as tenants in common until December 16, 1948, when W. W. Hughes conveyed his interest therein to R. H. Hughes. At the time of the transfer an alimony and maintenance decree, issued December 16, 1947, by the Circuit Court of Mercer County, West Virginia, was outstanding against W. W. Hughes in favor of his former wife and their three children. The decree ordered payment to be made in semi-monthly installments of $50 until the further order of the court. Of this decree R. H. Hughes had actual notice. More than $2,000 is now owing in accrued installments. W. W. Hughes is no longer a resident of West Virginia.

Mrs. Hughes, in behalf of herself and the three infant children, contends that an alimony and maintenance decree constitutes a lien on the real estate of one against whom it is decreed, from the date of its entry, for all future installments; that such lien follows the realty into the hands of, and is enforceable against, those who take it with notice of its existence; and that she is therefore entitled to such proportion of the proceeds now held in the registry of the court as W. W. Hughes' interest in the land bears to its total value ($1,650) at the time of the taking.

I am of opinion that Mrs. Hughes is entitled to so much of the proceeds as represents the interest which W. W. Hughes transferred to R. H. Hughes. An order will be entered in accordance therewith.

The law of West Virginia, which controls here, is settled that a decree for alimony constitutes a lien on the husband's real estate. It is provided by statute that a decree or order requiring the payment of money shall have the effect of a judgment for such money, Code, 38-3-1; and, that every judgment for money shall be a lien on all the real estate of or to which the defendant is or becomes possessed or entitled, Code, 38-3-6. The Supreme Court of West Virginia has held that the language of Code, 48-2-15, authorizing a court upon decreeing a divorce to make any order or decree concerning the estate of the parties as it shall deem expedient to make effectual any order or decree relating to alimony or maintenance, is sufficiently broad, when considered with Code, 38-3-6 above, to warrant a court in declaring alimony to be a specific lien on real estate. Goff v. Goff, 60 W.Va. 9, 53 S.E. 769; Gain v. Gerling, 109 W.Va. 241, 153 S.E. 504. The same is true as to a decree for maintenance of children. Korczyk v. Solonka, 130 W.Va. 211, 42 S.E. 2d 814.

The cases also clearly state that the lien extends from the date of entry of the decree to all future installments coming due. Goff v. Goff, supra; Gain v. Gerling, supra. That this lien is a continuing one is shown by the Korczyk case wherein it was held that the limitation provided in Code, 38-3-18, prohibiting enforcement of a judgment more than ten years after its entry unless execution thereon has issued prior to the expiration of that period, does not commence to run as to each installment until it becomes due. Therefore, the lien continues as to all those installments accruing within ten years prior to their enforcement even though some or all of the installments have accrued more than ten

years after entry of a judgment or decree on which no execution has issued.

In recognizing the far-reaching effects of this lien, it is important to note that the decree generally provides for monthly payments in a certain amount until the further order of the court. Thus, there is no way of knowing the exact amount owing under such a decree, as in the case of the ordinary judgment ordering the payment of a specific sum. And since the amount of the payments under the decree may be increased or decreased as the court sees fit, the ascertainment of the total even by the use of life expectancy tables is made impossible. Accordingly, such a decree will more frequently than not serve to restrain completely both the transfer and the encumbrance by the husband of his realty, because all those whose rights in the husband's land are acquired subsequent in time to entry of the decree, having either actual or constructive notice thereof, are faced with the peril of having their entire equity therein taken from them by enforcement of that lien against the land.

The difficulties which I have mentioned would be overcome if there existed any authority for discharging the lien by either payment of a fixed sum or transfer of specific property. Unfortunately, it is not clear that such authority exists. A decision on that question must await a case which properly presents it for the court's determination. However inconvenient the result may be, I am bound to apply the law as it has been laid down by the highest court of the state. I hold that the lien created by an alimony or maintenance decree is at least not terminated by the husband's transfer of the property to another who has notice of the award. To hold otherwise would permit the husband to defeat the effect of the decree as a lien on real estate by simply conveying away his property or contracting debts resulting in judgments before installments become due.

The only question remaining is the determination of the interest which W. W. Hughes had in the property when he transferred it to R. H. Hughes.

The evidence shows that R. H. Hughes and W. W. Hughes acquired this tract of land as tenants in common and erected a camp thereon with the help of contributions made by their father. R. H. Hughes, the only witness at the hearing, testified that his own contribution was about $1,700; that his brother's contribution was around $300; and that his father's contribution was approximately $500. Presuming that the father intended that the benefit of his $500 was to be shared equally by his sons, each would have an additional $250 in the land and building. Thus, the cost of the land and building was $2,500, of which $1,950 represented the interest of R. H. Hughes and $550 represented the interest of W. W. Hughes. Mrs. W. W. Hughes is entitled to so much of the proceeds as represents the interest which W. W. Hughes had in the property. W. W. Hughes' interest was eleven-fiftieths of the whole, and that of R. H. Hughes thirty-nine-fiftieths. Applying these fractions to the amount of the award, Mrs. W. W. Hughes will be paid $363 of the $1,650 now held in the registry of the court. The remaining $1,287 will be paid to R. H. Hughes.