291 S.E.2d 386

**Judith Kay WALLACE**

v.

**Eugene Richard WALLACE, Jr.**

No. 14738.

Supreme Court of Appeals of West Virginia.

May 14, 1982.

Sanders & Austin, William H. Sanders and Derek Craig Swope, Princeton, for appellant.

DiTrapano, Jackson & Buffa and P. Rodney Jackson, Charleston, for appellee.

HARSHBARGER, Justice:

On December 6, 1978, the Circuit Court of Raleigh County awarded Judith Wallace a divorce from Eugene Wallace, Jr., custody of their two young children, $500 per month for child support, and alimony descending from $198 monthly the first year, to none after the fourth year.

The court fixed alimony and support money based on Wallace's salary as a computer data process manager. It did not consider other income he had received from stock given to him by his parents in a corporation owned by the parents. Wallace received two disbursements from the business totaling $78,000, used to purchase a home and to support his family. He never participated in operating his parents' business.

During a reconciliation period between the first and final separations between Mr. and Mrs. Wallace, he transferred the stock back to his parents, incurring, according to his testimony, a gift tax liability of $17,000. Ms. Wallace alleged that this transfer was fraudulent and void because it was made in contemplation of impending divorce.

Wallace testified about his reasons for returning the stock to his parents:

Q ... What was the date you gave back your twenty percent ownership in Wallace and Wallace to the corporation?

A It was early in January. I can't remember exactly what day it was.

Q Was that after the first separation?

A It was after the separation which was from November through early part of December, and then we got together again in December and it was in January. Early part of January that I gave it back.

Q And it was done definitely in contemplation of alimony dispute that is going on? Isn't that right?

A No, that is not correct. At that time there was no way we would be involved in a divorce. However, based upon our relationship and the status of our relationship at that point, I felt that would be a worthwhile undertaking and if we stayed together or if we got a divorce my father's business would not be involved.

. . . .

A. It has been recorded in my previous testimony that my primary concern was to the business which my father had worked for, which he gave to me to assist him in paying less income tax, *that it should go back to him rather than my wife sharing in anything* being she felt so strongly against their helping. (Emphasis added.)

His mother's testimony confirmed Wallace's intent:

A. Well, in my son's words, because of the problems and the feeling that Judy had toward us, *he did not feel that what his father had worked for should be included in Judy's support.* Now, those are not his exact words, but that is what he meant, I am sure. (Emphasis added.)

"Fraud" is a generic term, encompassing many different and ever-innovative forms:

[W]hile it has often been said that fraud cannot or should not be precisely defined, the books contain many definitions, such as unfair dealing; malfeasance, a positive act resulting from a wilful intent to deceive; an artifice by which a person is deceived to his hurt; a wilful, malevolent act, directed to perpetrating a wrong to the rights of others; anything which is calculated to deceive, whether it is a single act or a combination of circumstances, or acts or words which amount to a suppression of the truth, or mere silence; deceitful practices in depriving or endeavoring to deprive another of his known right by means of some artful device or plan contrary to the plain rules of common honesty; the unlawful appropriation of another's property by design; and making one state of things appear to a person with whom dealings are had to be the true state of things, while acting on the knowledge of a different state of

things. Fraud has also been said to consist of conduct that operates prejudicially on the rights of others and is so intended; a deceitful design to deprive another of some profit or advantage; or deception practiced to induce another to part with property or to surrender some legal right, which accomplishes the end desired. Fraud therefore, in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another, or by which an undue and unconscientious advantage is taken of another....

... Fraud may be said to be an action of a more affirmative evil nature, such as proceeding or acting dishonestly, intentionally, and deliberately, with a wicked motive, to cheat or deceive one party to a transaction with respect to the situation or operations, or such as an action which results to his damage or loss and to the advantage or gain of the other party. 37 Am.Jur.2d, *Fraud and Deceit* § 1 (1968) (footnotes omitted).

*See also* 37 C.J.S., *Fraud* § 1 (1943); 8B M.J., *Fraud and Deceit* § 2 (1981); Black's Law Dictionary 594 (5th Ed. 1979).[1]

Fraud, accomplished by conveyance, is defined from Elizabethan statutes which declared in substance:

[T]hat every conveyance made to the end, purpose, and intent to delay, hinder, or defraud creditors "and others" of their just and lawful actions, etc., shall be void, with the proviso that nothing therein contained shall extend to defeat any estate or interest made on good consideration and bona fide to any person having, at the time, no notice of such fraud. 37 Am.Jur.2d, *Fraudulent Conveyances* § 2 (1968).

*See* Statute Against Fraudulent Deeds, Alienations, Etc., (St. 13 Eliz. I (1570) Ch. 5), as reprinted in Am.Jur.2d Desk Book, Item No. 207 (1979); 37 C.J.S., *Fraudulent Conveyances* §§ 2, 7 (1943 and Supp. 1981); 9A Michie's Jurisprudence, *Fraudulent and Voluntary Conveyances* §§ 3, 4 (1977).

W.Va.Code, 40–1–1, adopted much the same definition:

Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given, with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.

 So, by common law or statute, Mrs. Wallace must only prove that Wallace intended to diminish his estate, to frustrate her use thereof for calculating support money. Intent to deprive is *per se* fraud; and proof of such intent establishes a fraudulent conveyance. Whether intent to deprive existed is determined from the specific facts of each case. *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709, 718 (1981).

In *Goff v. Goff*, 60 W.Va. 9, 53 S.E. 769 (1906), a fiance deeded a large and valuable piece of land to a man friend with whom he had lived and with whom he continued to

---

1. *See generally* Annot., *Gift or other voluntary transfer by husband as fraud on wife*, 49 A.L.R.2d 521, 556 (1956); Annot., *Wife in respect of her right to maintenance or alimony as within protection of statute or rule avoiding conveyances or transfers in fraud of creditors or persons to whom maker is under legal liability*, 79 A.L.R. 421 (1932); Annot., *Gift by Husband as Fraud on Wife*, 64 A.L.R. 496 (1929); 24 Am.Jur.2d, *Divorce and Separation* § 727 (1966); 27B C.J.S., *Divorce* § 273 (1959 and Supp. 1980). *But see*

*Oles Envelope Corporation v. Oles*, 193 Md. 79, 88, 65 A.2d 899, 903 (1949), where the Maryland Court of Appeals wrote that: "A husband has the right to make a transfer of his property, either with or without consideration, even though he strips himself of all means of supporting his wife, and leaves her without the means of subsistence, provided that he does so in good faith and without intention of defrauding her of her just claims upon him and his estate."

live, even after his marriage. Applying the predecessor to 40–1–1, the court held that the conveyance was void, and that its alimony award was a lien on the land.

A voluntary conveyance made by a man under engagement to marry, made before and in contemplation of marriage, without the knowledge of the intended wife, *with intent to free the land of the marital rights of the wife,* is void as to her dower rights, and as to the alimony decreed against him in a suit for divorce. *Goff v. Goff, supra,* Syllabus Point 4. (Emphasis added.)

This Court has continued to follow and apply *Goff. See Smith v. Smith,* 110 W.Va. 82, 157 S.E. 37 (1931) (relying on the common law).

In *Patterson, supra,* a husband, after commencing divorce proceedings, conveyed property purchased from the parties' joint earnings, to his daughter by a prior marriage. Interpreting § 40–1–1, we decided that the grossly inadequate consideration paid by the daughter would compel a reasonable person to conclude that he intended to delay or hinder his wife's rights. *Id.,* at 718.[2]

■ A spouse certainly becomes a "creditor" protected by the statute when there is an award of support money against the other party. *See United States v. Spangler,* 94 F.Supp. 301 (S.D.W.Va.1950), W.Va.Code, 38–3–1, and 48–2–17, wherein an order for alimony, support or maintenance was recognized to be a lien on the paying spouse's estate when filed in the county clerk's records. And courts have recognized that a spouse has a right to protect a potential alimony award or property settlement from improper transfers before marriage, *Goff v. Goff, supra,* or in contemplation of divorce, *Hardy v. Hardy,* 228 Ark. 991, 311 S.W.2d 761, *opinion modified on other grounds,* 229 Ark. 116, 313 S.W.2d 387 (1958). *See generally* 27B C.J.S., *Divorce* § 273 (1959 and Supp. 1980); 24 Am.Jur.2d, *Divorce and Separation* § 727 (1966 and Supp. 1981).

■ Some courts have decided that a spouse qualifies not as a creditor, but as one of the "other persons" mentioned in the statute. *See Leonardo v. Leonardo,* 251 F.2d 22 (D.C.Cir.1958); *Higgins v. Higgins,* 219 Ill. 146, 76 N.E. 86 (1905); *Crowder v. Crowder,* 125 Va. 80, 99 S.E. 746 (1919). However one might label her status, she is one of those protected from acts before, during or after marriage intended to deprive her of part of her husband's estate upon which to base her claim for support.

■ We believe this evidence proved that Wallace intended to diminish his wife's alimony. *Patterson, supra; Stauffer v. Kennedy,* 47 W.Va. 714, 35 S.E. 892 (1900). Therefore, we reverse and remand for reconsideration of the amount of alimony she should receive.

Reversed and remanded.

---

2. Other states also rely on an intent test under the common law to determine the legality of such conveyances. *See e.g., Pappas v. Pappas,* 164 Conn. 242, 320 A.2d 809 (1973); *Hofmann v. Hofmann,* 99 Ill.App.3d 526, 54 Ill.Dec. 712, 425 N.E.2d 577 (1981); *McDaniel v. McDaniel,* 245 Ind. 551, 201 N.E.2d 215 (1964); *Grove v. Frame,* 285 Md. 691, 402 A.2d 892 (1979); *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972).