309 S.E.2d 45

**Dorothy Evelyn DAVIS, Committee, etc.**

v.

**KB & T CO., etc., et al.**

**No. 15700.**

Supreme Court of Appeals of West Virginia.

Nov. 10, 1983.

Marshall & St. Clair and James W. St. Clair, Huntington, Perry S. Poffenbarger, Charleston, for appellant.

Spilman, Thomas, Battle & Klostermeyer, Frederick L. Thomas, Jr. and Joyce F. Ofsa, Charleston, for appellees.

McGRAW, Chief Justice:

This is an appeal by Dorothy Evelyn Davis on behalf of her incompetent sister, Pennsy Davis Farley, from a decision of the Circuit Court of Kanawha County which upheld an inter vivos trust created by Mrs. Farley's husband in 1976, effectively depriving Mrs. Farley of property she would have received under a will executed by her husband in 1973.

Pennsy Davis and David T. Farley were married in 1918 when they were, respectively, twenty-five and twenty-three years of age. Both Mr. and Mrs. Farley worked hard. David operated a hardware store and Pennsy engaged in the securities business. Mr. and Mrs. Farley had no children, and they maintained a relatively frugal lifestyle. Consequently, they accumulated substantial assets.

On or about May 23, 1973, Mr. Farley executed a will prepared by his attorney, wherein he devised his entire estate to his wife. Several months later, Mr. Farley typed an identical will for his wife, which devised her entire estate to him. Mrs. Farley executed this will on or about October 1, 1973.

In March 1976, Mrs. Farley suffered a mental collapse. She has remained hospitalized since that time. Immediately following his wife's mental collapse, Mr. Farley suffered several heart attacks requiring his temporary hospitalization. On May 14, 1976, after his release from the hospital, Mr. Farley established an inter vivos

trust and executed a new will. On July 8, 1976, less than two months later, David T. Farley died.

The inter vivos trust established by Mr. Farley named Kanawha Banking & Trust Company, N.A., (KB & T) as trustee. The trust provides that the net income should be paid to Mr. Farley during his lifetime, and that should Mrs. Farley survive him, the net income should be paid to Mrs. Farley, "if the income of said Pennsy D. Farley from other sources known to said trustee is for any reason insufficient to provide unto her comfortable support and maintenance and medical and hospital care ...." Upon the death of Mr. Farley and his wife, the trust terminates and the principal and accumulated income is directed to be distributed to certain named beneficiaries. Finally, the trust reserved to Mr. Farley the right to amend or revoke the trust during his lifetime.

Simultaneously with the execution of the trust instrument, Mr. Farley executed a new will in which he bequeathed to his widow all his tangible personal property. The residue of his estate, consisting solely of personalty,[1] was bequeathed to KB & T as trustee under the inter vivos trust. The will further provided that should Mr. Farley survive his wife, and thereby acquire her property, valued at approximately $700,000, said property, after payment of all debts, taxes, and costs of administration, was to be distributed to certain named heirs of his wife.

Upon execution of the trust instrument and will, Mr. Farley transferred and delivered to KB & T personal property consisting of stocks, bonds, certificates of deposit, and cash, all valued at approximately $145,000. He also executed change of beneficiary forms naming KB & T, as trustee, the beneficiary under certain life insurance policies valued at approximately $27,000.

Upon Mr. Farley's death, his new will was probated by the Kanawha County Commission. The appraisal of the decedent's estate disclosed probate assets valued at approximately $12,000.

On February 23, 1977, the appellant was qualified as committee for Mrs. Farley. Thereafter, she commenced this action seeking to renounce Mr. Farley's 1976 will, alleging that the wills executed by Mr. and Mrs. Farley in 1973 were irrevocable reciprocal wills. Alternatively, the appellant alleged that Mrs. Farley was entitled to a dower interest in all the property in the control of her husband at the time of his death, including the property placed in the inter vivos trust. Finally, the appellant alleged that Mr. Farley was incompetent on May 14, 1977, when he executed the trust agreement and new will.

By order entered January 15, 1982, the Circuit Court of Kanawha County dismissed the appellant's action, ruling that: (1) there were no irrevocable reciprocal wills made by Mr. and Mrs. Farley; (2) Mr. Farley's estate did not include the assets transferred to the inter vivos trust, and, therefore, it would not be in Mrs. Farley's best interest to renounce the 1976 will and take her statutory share; and (3) Mr. Farley was competent to execute the 1976 trust agreement and will.

On appeal, the appellant contends that the lower court erred in determining that Mr. and Mrs. Farley's 1973 wills were not irrevocable reciprocal wills and that the property transferred to the inter vivos trust is not a part of the probate estate to which Mrs. Farley's dower interest would attach. We affirm the decision of the lower court.

I.

The appellant contends that the wills executed by Mr. and Mrs. Farley in 1973 are reciprocal and mutual wills, and that therefore Mr. Farley's will could not be revoked after his wife became incompetent. There is no question that the 1973 wills are reciprocal wills. Reciprocal wills are generally defined as wills in which the testators name each other as beneficiaries under similar testamentary plans. *See* 79 Am.Jur.2d, *Wills*, § 754 (1975). The Farleys' 1973 wills meet these criteria, since

---

**1.** The marital home is owned by Mrs. Farley.

each names the other spouse as sole beneficiary, and they contain identical provisions, except for the obversion of names.

Whether the 1973 wills constitute mutual wills, however, is disputed. Mutual wills are defined as wills executed pursuant to an agreement between the testators to dispose of their property in a particular manner, each in consideration of the other. 79 Am.Jur.2d, *Wills*, § 754 (1975). Thus, to establish the existence of mutual wills, an agreement or contract between the parties must be shown. *See, e.g., Turner v. Theiss*, 129 W.Va. 23, 38 S.E.2d 369 (1946); *In re Werkman's Will*, 122 W.Va. 583, 13 S.E.2d 73 (1940); *Wilson v. Starbuck*, 116 W.Va. 554, 182 S.E. 539 (1935).

This Court has previously held that the existence of reciprocal provisions, by which each spouse devises and bequeaths his or her estate to the other, is not, in and of itself, sufficient to establish an agreement by them to execute mutual wills. *In re Werkman's Will, supra.* Thus, while reciprocal provisions, contained in the separate wills of a husband and wife, are evidence of a contractual agreement between the testators to make mutual wills, *see Turner v. Theiss, supra; Underwood v. Myer*, 107 W.Va. 57, 146 S.E. 896 (1929), in order to sufficiently establish the contractual relationship, additional circumstances must normally be shown which give rise to a clear implication that the wills were made pursuant to a common understanding. *Turner v. Theiss, supra; In re Reed's Estate*, 125 W.Va. 555, 26 S.E.2d 222 (1943); *Wilson v. Starbuck, supra; Underwood v. Myer, supra.*

The court below found no evidence that an agreement or common understanding existed between Mr. and Mrs. Farley to execute mutual wills. We held in *Turner v. Theiss, supra*, that a trial court's finding on the issue of whether a contract or agreement to make mutual wills existed between the parties is a finding of fact which will not be disturbed on appeal unless it is contrary to the plain preponderance of the evidence, or is with-

out evidence to support it. The evidence below indicates that although the wills contain reciprocal provisions, there is nothing on their face to indicate an agreement or contract to make mutual wills. The wills were executed at different times, more than four months apart, and were attested to by different witnesses. Finally, the testimony of witnesses who were present when Mrs. Farley executed her will, discloses no indication that an agreement, contract, or common understanding existed between the Farleys to make mutual wills. It appears from the record that Mr. Farley typed his wife's will using his own will as a model. The logic of the obversion of names in otherwise identical wills is inescapable. In the face of this evidence, we must agree with the trial court that the appellant failed to establish the existence of mutual wills. Accordingly, Mr. Farley's 1973 will remained revocable during his lifetime. *See Turner v. Theiss, supra* 129 W.Va. at 26–27, 38 S.E.2d at 372.

## II.

We now reach the question of the validity of the inter vivos trust established by Mr. Farley in 1976. The appellant alleges that the trust was a scheme designed to permit Mr. Farley to retain ownership and control of the trust assets during his lifetime, and upon his death, to deprive his wife of the share in his estate to which she is entitled by statute.[2] Accordingly, the appellant argues that the trust is illusory and operates as a fraud upon Mrs. Farley's statutory entitlement in her husband's estate. The lower court ruled that the trust was a valid inter vivos conveyance which effectively removed the trust assets from Mr. Farley's estate, and that it did not constitute a fraud upon Mrs. Farley's interests.

The question of the validity of an inter vivos trust which impairs the statutory right of the surviving spouse to share in the settlor's estate is an issue which has been addressed in numerous jurisdictions. *See Annot.*, 39 A.L.R.3d 14 (1971 & Supp. 1982). Generally, in resolving the issue,

2. *See* W.Va.Code § 42–3–1 (1982 Replacement Vol.).

courts have taken one of two approaches. The first approach involves a determination of whether the transfer of property is real and bona fide, or whether the settlor has reserved such powers of ownership and control over the trust property as to make the transfer illusory or testamentary in character. *See* cases collected at 39 A.L. R.3d 23–24, 29. The second approach involves examination of the question whether the transfer of property in trust constituted a fraud upon the rights of the spouse. *See* cases collected at 39 A.L.R.3d 25–26. The appellant has incorporated both of these approaches in her argument.

■ To support her argument that the trust established by Mr. Farley is illusory or testamentary in character, the appellant relies primarily upon the fact that the trust instrument reserves to Mr. Farley the right to amend or revoke the trust during his lifetime. It is well established, however, that the retention by the settlor of the power to revoke or modify a trust is insufficient, standing alone, to render the trust illusory or testamentary. *See, e.g.,* I A. Scott, *The Law of Trusts* § 57.1 (3d ed. 1967) and cases cited therein. As is stated in *Restatement (Second) of Trusts* § 57 (1959):

> Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.

This rule is further explained, as follows:

> If the owner of property transfers it inter vivos to another person in trust, the intended trust is not invalid merely because the settlor reserves a beneficial life estate and a power to revoke or modify the trust, even though he was prohibited by statute from creating a similar trust by will.

Thus, if it is provided by statute that the wife of a testator shall be entitled to a certain portion of his estate of which she cannot be deprived by will, a married man can nevertheless transfer his property inter vivos in trust and his widow will not be entitled to a share of the property so transferred, even though he reserves a life estate and power to revoke or modify the trust.

*Restatement (Second) of Trusts,* § 57 comment c.

We recognized this rule in *Spangler v. Vermillion,* 80 W.Va. 75, 92 S.E. 449 (1917), where we cited with approval *Lines v. Lines,* 142 Pa. 149, 21 A. 809 (1891), which held that

> a voluntary deed, by which personal property was conveyed to a trustee, to be divided among certain beneficiaries at a time to be selected by him, though containing a power of revocation, and providing that before distribution the income should be paid to the grantor during his life, created a valid trust, and was not testamentary in character; and that the right of revocation was not inconsistent with the creation of a valid trust, and if not exercised during the life of the grantor according to its terms, the validity of the trust remained as though the deed contained no reservation of right of revocation.

80 W.Va. at 87, 92 S.E. at 453. More recent cases which have upheld the validity of revocable inter vivos trusts over the claims of surviving spouses include *Windsor v. Leonard,* 475 F.2d 932 (D.C.Cir. 1973); *Richards v. Worthen Bank & Trust Co.,* 261 Ark. 890, 552 S.W.2d 228 (1977); *Johnson v. LaGrange State Bank,* 73 Ill.2d 342, 22 Ill.Dec. 709, 383 N.E.2d 185 (1978); and *Leazenby v. Clinton County Bank & Trust Co.,* 171 Ind.App. 243, 355 N.E.2d 861 (1976).

The appellant further argues that Mr. Farley established the trust with the intent to deprive his wife of her statutory share in his estate, and therefore, it is, per se, a fraudulent conveyance and void as to Mrs. Farley's interests. The appellant relies upon our recent decision *Wallace v. Wal-*

*lace,* 170 W.Va. 146, 291 S.E.2d 386 (1982), as support for this proposition. *Wallace* is a divorce case in which the wife sought to set aside a stock conveyance made by her husband. The wife alleged the conveyance was fraudulent and void because it was made in contemplation of divorce. In *Wallace* there was testimonial evidence which indicated that the conveyance was made with the express intent to deprive the wife of any claim to the stock assets. We recognized in the syllabus of *Wallace* that "[s]pouses are protected from acts before, during or after marriage that are intended to deprive them of part of their marital partners' estates upon which to base claims for support." In holding that the conveyance in question was fraudulent, we further stated that "[i]ntent to deprive is *per se* fraud; and proof of such intent establishes a fraudulent conveyance. Whether intent to deprive existed is determined from the specific facts of each case." 170 W.Va. at 148, 291 S.E.2d at 388 (citation omitted).

*Wallace* did not involve an inter vivos trust nor the claim that the spouse was being deprived of her statutory share of the estate under W.Va. § 42–3–1. It involved fraudulent transfer of property in contemplation of ordering a divorce. Courts from other jurisdictions which have considered the validity of an inter vivos trust, attacked as a fraud upon the rights of a spouse, have generally recognized "that the settlor's intention or purpose to deprive his or her spouse of a distributive share or other statutory right in the property transferred is not, in and of itself, sufficient to establish a fraudulent intent on the settlor's part ...." *Annot.,* 39 A.L.R.3d 14, 19 (1971).

■ An examination of cases from other jurisdictions reveals no single standard which can be applied to test the validity of an inter vivos trust attacked by the set-

tlor's spouse as a fraud upon his or her marital rights. Rather, the majority of courts which have addressed the question appear to decide the issue in a case by case basis, in light of the particular facts and circumstances. *See, e.g., Johnson v. La-Grange State Bank, supra; Gianakos v. Magiros,* 234 Md. 14, 197 A.2d 897 (1964); *Merz v. Tower Grove Bank & Trust Co.,* 344 Mo. 1150, 130 S.W.2d 611 (1939); *Sherrill v. Mallicote,* 57 Tenn.App. 241, 417 S.W.2d 798 (1967). *Cf. Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966 (1937); *Land v. Marshall,* 426 S.W.2d 841 (Tex.1968). This approach is understandable, given the myriad factual situations in which the issue may arise. Accordingly, we believe the better course is to adopt a flexible standard which takes into account all of the circumstances and weighs the equities on each side.[3]

■ In this case, the facts do not support a conclusion that the inter vivos trust established by Mr. Farley was illusory, testamentary, or created with an intent to deprive his wife of her statutory share in his estate. This is not a case involving a sham trust wherein the settlor names himself as trustee and sole beneficiary, thus retaining both legal and equitable title to the trust property with the right to control the disposition of the trust assets. On the contrary, the trust established by Mr. Farley is a bona fide trust. In this regard we note that the trust agreement names a trustee other than the settlor who is given sole discretion to manage the trust property. Further, the property placed in trust was transferred and physically delivered to the named trustee. Moreover, the trust agreement grants discretion to the trustee during the settlor's lifetime to use all or any of the income and principal for the support and maintenance of both Mr. and Mrs. Farley if either of them became inca-

---

**3.** Some courts, as illustrated by *Whittington v. Whittington,* 205 Md. 1, 106 A.2d 72 (1954), have attempted to set some general guidelines which are helpful, although they may not be controlling in a given case. In *Whittington,* 205 Md. at 12, 106 A.2d at 77, the court listed these factors:
—completeness of the transfer;
—motive of the transferor;

—participation by the transferee in the alleged fraud on the surviving spouse;
—amount of time between the transfer and death;
—degree to which the surviving spouse is left without an interest in the decedent's property or other means of support.

pacitated by illness, age, or other cause. Upon the death of the settlor, the trustee is further directed to distribute to Mrs. Farley all or part of the net income of the trust necessary to provide for "her comfortable support and maintenance and medical and hospital care." The fact that Mr. Farley retained a right to amend or revoke the trust is insufficient to render the trust illusory or testamentary. Indeed, it appears from the testimony that the trust was made revocable upon the recommendation of the attorney who prepared the trust document, and not by the design of the settlor.[4]

Mr. Farley's apparent purpose in creating the trust was to provide for himself and his wife in the event of incapacity. It is relevant to note that at the time the trust was established Mrs. Farley was hospitalized for a complete mental breakdown, and that Mr. Farley himself was in poor health, having suffered several heart attacks following his wife's hospitalization. The Farleys had no children, and Mr. Farley was concerned with who would manage their affairs should he become further incapacitated. Thus, it appears the trust was established not with an intent to deprive Mrs. Farley of her marital rights, but to provide for both Mr. and Mrs. Farley in the event of further misfortune.

It is clear from the record that Mrs. Farley is a wealthy woman in her own right with an estate valued at approximately $700,000, which does not include the family residence owned outright by Mrs. Farley. Thus, Mrs. Farley will not be left destitute should the appellant fail in her attempt to increase her elderly aunt's estate. Moreover, the appellee asserts, and the appellant does not dispute, that Mr. Farley's business acumen played a substantial role in the acquisition of his wife's sizable estate.

The ultimate effect of the circuit court's ruling is consistent with Mr. Far-

ley's intent, apparent on the face of the 1976 trust agreement and will, that his estate should go to his side of the family and his wife's estate should go to her side of the family. This intent, not being contrary to any positive rule of law, is entitled to great weight. *See, e.g., Hemphill v. Aukamp,* 164 W.Va. 368, 264 S.E.2d 163 (1980); *Wheeling Dollar Savings & Trust Co. v. Hanes,* 160 W.Va. 711, 237 S.E.2d 499 (1977).

We believe the intended distribution of property pursuant to the 1976 trust agreement and will is an equitable result under the facts and circumstances of this case. Mr. Farley's estate will pass to his side of the family upon termination of the trust. Because Mr. Farley predeceased her, Mrs. Farley's devise contained in her 1973 will lapsed, and her property will go to her heirs. *See Wilson v. Starbuck,* 116 W.Va. 554, 182 S.E. 539 (1935).

For the foregoing reasons, the decision of the Circuit Court of Kanawha County that the wills executed by Pennsy Davis and David T. Farley in 1973 were not irrevocable reciprocal wills, and that the property transferred by David T. Farley to the inter vivos trust is not a part of his probate estate, is affirmed.

Affirmed.

---

**4.** The testimony on this point was:

Q Did you ever discuss with Mr. Farley specifically his right to revoke the trust and take all the money back and the stocks, or whatever they were?

A Well, I'm sure that I explained to him that it should be revocable. I would never recommend to a person that they execute an irrevocable trust, because he might have very well not like the way the bank was handling the affair, and I wouldn't under any circumstances want to put someone in that position.